NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

YASER ALFARTOUSI, *Appellant.*

No. 1 CA-CR 24-0560

FILED 02-03-2026

Appeal from the Superior Court in Maricopa County
No. CR2021-132151-001
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

The Susser Law Firm, PLLC, Chandler
By Adam Susser
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

**B E C K E**, Judge:

¶1      Appellant Yaser Alfartousi appeals his conviction and probation grant for stalking. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2      "Adara"[1] is the youngest child in a family of seven: three brothers, including Appellant Yaser[2], one sister, and a mother and father ("the Alfartousis"). In 2019, when Adara was 18 years old, she began dating "Mark." Adara did not tell her parents she was dating Mark, as she feared she could be killed for being in a relationship with a non-Muslim man.

¶3      In March 2021, Adara left her parents' home and moved in with Mark and his mother. Adara did not tell her family where she was going, and they immediately started to look for her. The same day she moved out, Adara was walking to a store when the Alfartousis drove by in Yaser's gold van and told Adara to come back home. People in a nearby store saw what was happening and called the police, who arrived and separated the family from Adara. Adara saw Yaser on multiple other occasions after she had moved out.

¶4      A few days after Adara moved out, Adara and Mark left Mark's mother's home and began staying at a hotel. Adara saw Yaser in his gold van in the parking lot of the hotel. Adara's mother and sister then banged on her hotel room door. Adara was scared, so she hid in the bathroom and called the police.

¶5      The next day, Adara was detained by police and taken to a mental health facility because her family had petitioned to have her mental health evaluated. Adara did not know why her family would have filed a

---

[1] We use pseudonyms for victims Adara and Mark to protect their privacy. *See* Ariz. R. Sup. Ct. 111(i).
[2] Because the co-defendants share the same family name, we refer to the Appellant by his first name.

petition for her mental health. As Adara was being discharged from the facility the next day, she saw the Alfartousis waiting for her. She told nurses that "they're trying to get me," so security escorted her to another exit.

¶6        A few weeks later, Adara and Mark were in their car when she saw the Alfartousis in Yaser's gold van. As Adara and Mark were driving, they saw that the van "was going to crash" into their car. Adara's brother Bashir then got out of the van with a weapon in his hand, prompting Adara and Mark to drive away to a nearby gas station to call the police.

¶7        Adara and Mark then moved to a different hotel, but within a day, she saw her family again. They then decided to move to Yuma. By the time they established themselves in Yuma, Adara had obtained orders of protection against everyone in her family.

¶8        Adara and Mark then moved back to the Phoenix area. Around June 2021, Adara became pregnant. She feared her family would harm her for being unmarried and pregnant with a non-Muslim man's child.

¶9        In August 2021, some of the Alfartousis, including Yaser, showed up to a doctor's office where Adara and Mark were getting a prenatal checkup. When Adara and Mark were about to enter the doctor's office, the family grabbed Adara and told her to come back home. Yaser held Mark as the others present threw Adara into their car. Adara was able to climb out of the car, but she was then punched in the stomach by her brother Ali, resulting in her hospitalization. Adara's purse, which contained a gun she and Mark had purchased for safety, was taken by her family. Nurses from the doctor's office called the police after witnessing this incident. Adara stated that this incident made her afraid "[t]hat they were going to take [her] and kill [her]."

¶10        All six of Adara's family members were charged for their roles in these acts and they were tried together. At first, Yaser was indicted on two charges: kidnapping and aggravated robbery. The State eventually filed a new indictment under a different case number. Collectively, there were four charges against Yaser: kidnapping, aggravated robbery, stalking of Adara, and stalking of Mark. Each was a felony charge.

¶11        The State filed an indictment alleging the stalking charges under case number CR2023-006953.[3] The State then dismissed CR2023-006953 without prejudice and the parties stipulated that an amended indictment would be filed in this case. However, for reasons not clear from the record, the amended indictment was never filed.

¶12        The stalking counts tried to the jury in this case were listed only in the indictment filed in dismissed case CR2023-006953. Without objection, that indictment, including the stalking charges, was read to the jury at the beginning of the trial. Defense counsel acknowledged during closing argument that Yaser was charged with stalking. Yaser made no objection at any point during the trial to the stalking charges or the failure to file the amended indictment, nor did he object when the verdict was read.

¶13        Yaser was convicted of unlawful imprisonment (a lesser included offense of kidnapping), aggravated robbery, and stalking of Adara. His sentences were suspended and he was placed on supervised probation for each conviction, with the longest term being 10 years for stalking. He appeals his conviction and probation grant for stalking. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031 and 13-4033(A).

## DISCUSSION

### I.        The Failure to File the Amended Indictment Was Not Structural Error and Did Not Result in Fundamental Error.

¶14        Yaser first argues that the State's failure to file the amended indictment in this case adding the stalking charges was structural or fundamental error.

¶15        Structural error "affects 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *State v. Torres*, 208 Ariz. 340, 343–44, ¶ 11 (2004). It "is so significant that the affected disposition is necessarily unreliable." *State v. Perez-Gutierrez*, 257 Ariz. 334, 339, ¶ 17 (2024). We find structural error in "relatively few instances" of errors that "deprive defendants of basic protections and infect the entire trial process." *State v. Bush*, 244 Ariz. 575, 591, ¶ 66 (2018) (internal quotations omitted). Here, Yaser's stipulation to the filing of the amended

---

[3] We will take judicial notice of the indictment in CR2023-006953 filed in superior court on April 27, 2023. *See* Ariz. R. Evid. 201; *In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000).

indictment with the stalking charges and his participation in the trial with notice of those charges forecloses any finding of structural error.

¶16 In support of his contention that structural error should apply, Yaser cites only *State v. Buckley*, 153 Ariz. 91 (App. 1987). However, *Buckley* discusses subject matter jurisdiction, not structural error. In *Buckley*, no information or indictment was ever filed against the defendant. *Id.* at 92. The defendant argued on appeal that the lack of information voided his conviction and sentence, asserting that the trial court lacked subject matter jurisdiction under Article 2, Section 30 of the Arizona Constitution, *id.*, which states in part "[n]o person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment." Ariz. Const. art. 2, § 30. *Buckley* held that, although the information was never filed, the complaint (which was filed) and plea agreement (which the court accepted after a colloquy with, and factual basis provided by, the defendant) gave the defendant sufficient notice of his charges and conferred subject matter jurisdiction on the court. 153 Ariz. at 94. Yaser argues that he lacked what he refers to as the "remedial processes" of a complaint or plea agreement stating his charges.

¶17 Our supreme court has since held in *State v. Maldonado* that filing an indictment or information is not necessary to confer subject matter jurisdiction to the superior court in criminal cases. *See* 223 Ariz. 309, 312, ¶ 20 (2010). In *Maldonado*, the defendant was charged by information with possession of cocaine, but the information was not filed with the superior court until after he was convicted. *Id.* at 310, ¶¶ 2–3. The Arizona Supreme Court held "that the State's failure to file an information before trial did not deprive the superior court of subject matter jurisdiction or constitute fundamental error." *Id.* at ¶ 1. *Maldonado* also clarified *Buckley*, stating that its conclusion that documents of record, like a complaint or plea agreement, were the equivalent of an information was "simply a different way of saying that the actual filing of an information is not jurisdictional." *Id.* at 313, ¶ 23. Likewise, the superior court here had subject matter jurisdiction without a filed indictment.

¶18 Because Yaser shows no structural error and did not object to the indictment at trial, we review for fundamental error. *See Maldonado*, 223 Ariz. at 313, ¶ 25 ("If a defendant does not object before trial, as occurred here, the state's failure to timely file an information will be reviewed on appeal only for fundamental error."); *see also State v. Trudell*, 258 Ariz. 290, 293, ¶ 17 (App. 2024) ("For error that does not rise to the level of structural error, if the defendant fails to object at trial, we review only for fundamental, prejudicial error.").

¶19            To prevail on fundamental error review, Yaser must show that "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018) (emphasis in original). If Yaser shows prong one or two, then he must also show prejudice. *See id.* If he shows prong three, then prejudice is already established. *See id.* Finally, where applicable, establishing prejudice is a "fact-intensive inquiry." *Id.*

¶20            Yaser has failed to show prejudice and therefore cannot prevail under the first two prongs. In *Maldonado*, the supreme court reviewed "the state's failure to timely file an information" for fundamental error. 223 Ariz. at 313, ¶ 25. The court held that there was no prejudice because the same information charge was the basis of a preliminary hearing and arraignment, and the information was read to the jury at trial. *Id.* at ¶ 26. The defendant in *Maldonado* also "acknowledge[d] that he had notice of the charge for which he was tried" and did not allege any prejudice. *Id.*

¶21            Here, as in *Maldonado*, the defendant was aware that he was being prosecuted on stalking charges. The parties *stipulated* to filing the amended indictment containing those charges. Defense counsel stated during closing argument that "both my clients, both Bashir and Yaser are accused of stalking." Additionally, the indictment with the stalking charges was read to the jury without objection by Yaser. Because Yaser fails to show prejudice, he fails to show fundamental error under prongs one or two.

¶22            Prong three is also not met. This prong requires a showing of error that "so profoundly distort[s] the trial that injustice is obvious." *Escalante*, 245 Ariz. at 141, ¶ 20. Nothing that occurred here meets or approaches that standard. Yaser stipulated to filing the amended indictment and knew that the trial included stalking charges.

¶23            Yaser fails to establish either structural or fundamental error in the State's failure to file the amended indictment.

**II.   There Was Sufficient Evidence to Support Yaser's Conviction for Stalking.**

**¶24**      Yaser lastly argues that there was insufficient evidence to sustain his stalking conviction. We review the sufficiency of the evidence *de novo*. *State v. Rodriguez*, 251 Ariz. 90, 96, ¶ 16 (App. 2021). Evidence is sufficient when "substantial evidence supports the jury's verdict." *State v. Cox*, 217 Ariz. 353, 357, ¶ 22 (2007). "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)). "We resolve any conflicts in the evidence against the defendant and view all facts in the light most favorable to supporting the verdict." *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014).

**¶25**      A person commits stalking by "intentionally or knowingly engag[ing] in a course of conduct that is directed toward another person and if that conduct causes the victim to . . . [s]uffer emotional distress or reasonably fear that" the victim will be physically injured. A.R.S. § 13-2923(A)(1)(b)(i). "Course of conduct" means a person "directly or indirectly, in person or through one or more third persons or by any other means . . . [m]aintain[ed] visual or physical proximity to a specific person or direct[ed] verbal, written or other threats, whether express or implied, to a specific person on two or more occasions over a period of time, however short." A.R.S. § 13-2923(D)(1)(a)(i).

**¶26**      Yaser contends that Adara saw his van but did not see Yaser. However, Adara testified that she saw Yaser at "two or more" of the incidents. These included when she was staying in a hotel and Yaser was in his van parked in the parking lot. Adara said she was scared and hid in the bathroom. Adara then saw "all of" her family when being discharged from the mental health facility, and she told the nurses that "they're trying to get me." Adara testified to seeing Yaser in the gold van when it almost crashed into Adara and Mark's car. Adara stated they then drove to a gas station because they were scared and wanted to get help. Finally, Adara testified that she saw Yaser when he held Mark back while Adara was thrown into a car and punched in the stomach before being hospitalized. Adara stated that she was afraid "[t]hat they were going to take [her] and kill [her]."

¶27        Viewed in the light most favorable to upholding the verdict, Adara's testimony as to these incidents is substantial evidence that Yaser committed stalking. Adara's testimony was sufficient to support the jury's verdict.

## CONCLUSION

¶28        We affirm.

